UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES,** ) | |
| ) | |
| v. ) | Criminal Action No. 15-140-01 (RMC) |
| ) | |
| **RASHIDA KING,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**SENTENCING MEMORANDUM**

Rashida King entered a plea of guilty on January 14, 2016 to a one-count Information which charged her with Conspiracy to Defraud the United States with Respect to Claims, in violation of 18 U.S.C. § 286. Ms. King faced a sentencing range under the U.S. Sentencing Guidelines of 10 to 16 months in custody and one to three years of supervised release. This Court sentenced her to a term of probation for three years with a condition of home detention from 7:00 p.m. to 6:00 a.m. and location monitoring. This Memorandum Opinion explains the Court's variance from the Sentencing Guidelines.

**I. FACTS**

**A. Criminal Charge and Sentencing**

Ms. King participated in a conspiracy involving more than 130 individuals that filed hundreds of false tax returns based on false names, false addresses, false income figures, and false entitlements to over $42 million in tax refunds. The identity theft and tax fraud scheme involved several layers of coconspirators; Ms. King both typed some false tax returns and also established numerous bank accounts into which she deposited tax refunds and withdrew money for delivery to others in the upper layers of the conspiracy. Although the conspiracy continued for five or more years, Ms. King's participation was limited to the period between May 2010 and

1

February 2011. The parties agreed that Ms. King has a restitution obligation of $82,939.41 to the Internal Revenue Service for false tax refunds attributable to her. The Government did not seek forfeiture.

The base offense level for Ms. King's crime was 6. Because the loss in this case was at least $82,939.41, the base offense level was increased by 6 levels, to 12. *See* U.S.S.G. § 2B1.1(b)(1)(D). In addition, the offense involved ten or more victims, adding two more levels to the base offense. *See* U.S.S.G. § 2B1.1(b)(2)(A)(i). Thus, the adjusted offense level was 14. Because Ms. King accepted responsibility early and entered a pre-trial plea (she responded to a target letter, with counsel, and negotiated a pre-indictment plea), the offense level was reduced two levels, to level 12. *See* U.S.S.G. § 3E1.1(a). Ms. King's total criminal history score was zero, and thus her criminal history category was I. U.S.S.G. Chapter 5, Part A.

Based on an offense level of 12 and a criminal history category of I, the Guidelines provided for a sentence of custody of 10 to 16 months, plus one to three years of supervised release. The Government sought a sentence of six months' incarceration to be followed by a term of supervised release that would include six months' home detention. Ms. King sought a downward departure of four levels pursuant to U.S.S.G. § 5H1.6, which provides for departure where there are extraordinary family circumstances, and a sentence of home confinement[1] without incarceration.

The Court appreciated the bases for each of these recommendations but adopted neither. Instead, the Court sentenced Ms. King to a term of probation for three years with a

---

[1] While Ms. King sought "home confinement," she did not specify whether she sought it as a condition of probation or a condition of supervised release, she did not specify the term sought, and she did not specify whether she proposed to be released from home confinement for certain hours of the day for work, medical appointments, grocery shopping, or other reasons.

condition of home detention from 7:00 p.m. to 6:00 a.m. with location monitoring. The Court also imposed a restitution obligation of $82,939.41, to be shared jointly and severally with defendant Antonio Cooper, Criminal Case No. 15-152-01. Because Ms. King did not have the ability to pay, the Court waived a fine and the cost of location monitoring. The Court also imposed a $100 special assessment.

### B. Personal Background of Defendant

Ms. King worked in the Washington, D.C., metropolitan area, primarily in the general health care field, for various periods between 2004 and January 2015, when she relocated to Georgia. She has a high school diploma and some college. Her jobs have always been paid on an hourly basis. In 2009, she lost her job because she had missed too many days due to a difficult pregnancy. She found herself without work for two years. During that period, she engaged in the criminal conduct at issue. Once she became employed again in 2011, she ceased her criminal conduct. However, there have continued to be long periods of time since 2011 during which Ms. King once again found herself without work. There is no evidence that she ever returned to unlawful activity.

Ms. King is the mother of three children. Her eldest daughter is 23 years old, working on a master's degree in Florida, and supporting herself as an executive chef. Ms. King's 14-year-old son lives with his father in the District of Columbia. Her youngest daughter is seven years old and totally reliant on her mother. The father of the seven-year-old is married to another woman, has a separate family, and has not been involved in raising or supporting the seven-year-old.

At the times when Ms. King was unemployed and financially indigent, she and her young daughter slept on friends' couches, lived in shelters, or lived in a car. With Court

authorization, Ms. King moved to Georgia in January 2015 to assist her elderly, ill father. Ms. King had no job in the D.C. area at that time. Her father's health further deteriorated, and he now lives in a nursing home. After months of living in a shelter with her daughter in Georgia, Ms. King found a job and an apartment. At this time, she has established normalcy in her child's life. Ms. King's daughter is an honor roll student with perfect attendance, and she is a top reader.

There is no other family member who could care for Ms. King's young daughter if Ms. King were incarcerated. Thus, if Ms. King were incarcerated, the seven-year-old would become a ward in the Georgia foster care program. Due to these facts, Ms. King sought a downward departure due to extraordinary family circumstances under U.S.S.G. § 5H1.6 and a sentence of home confinement without incarceration.

## II. LEGAL STANDARD

At sentencing, a district court must first ascertain and consider the appropriate sentencing range recommended by the Sentencing Guidelines. However, the Guidelines are no longer mandatory and provide recommendations based on national experience only. *United States v. Booker,* 543 U.S. 220 (2005). To devise a sentence that is "sufficient but not greater than necessary," a court also must fully consider the sentencing factors identified in 18 U.S.C. § 3553(a). Those relevant here include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;

>> (C) to protect the public from further crimes of the defendant; and
>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . .

This Court provided such analysis at the Sentencing Hearing, and issues this Sentencing Memorandum to explicate its reasoning.

### III. ANALYSIS

Ms. King moved for downward departure due to extraordinary family circumstances under U.S.S.G. § 5H1.6. She sought a term of home confinement with no time in custody.

Chapter 5, Part H of the U.S. Sentencing Guidelines addresses specific offender characteristics. Section 5H1.6 advises that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." *Id.* However, the Commentary to § 5H1.6 suggests that a departure may be warranted where:

> (i) The defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family.
>
> (ii) The loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant.

U.S.S.G. § 5H1.6 Commentary, Application Note 1(B)(i) & (ii).  *See United States v. Dyce*, 91 F.3d 1462, 1466 (D.C. Cir. 1996) (a court may depart based on family ties and responsibilities only if the case "significantly differs" from the norm).

The Government did not contest the fact that Ms. King is the sole caretaker of her seven-year-old daughter, but it argued that a downward departure under § 5H1.6 was not warranted because the loss of caretaking and financial support that would be caused by Ms. King's incarceration would not exceed the harm ordinarily incident to incarceration.  The Government insisted that the seriousness of the offense and the need for deterrence strongly supported its recommendation to impose a sentence of six months' incarceration, followed by supervised release that would include six months' home detention.  The Government asserted that it already had taken Ms. King's personal situation into account when it made its recommendation.

The Court denied Ms. King's request for a downward departure under U.S.S.G. § 5H1.6 because she did not demonstrate that she and her family would suffer extraordinary harm due to incarceration.  Even so, considering the record as a whole, the Court determined that a variance was appropriate.  Tr. 7/29/2016 at 19 (Court: "I really have to vary").  *See also United States v. Fumo,* 655 F.3d 288, 317 (3d Cir. 2011) (a "departure" diverges from the originally calculated sentencing range for reasons contained in the Guidelines themselves and a "variance" diverges from the Guidelines range based on an exercise of the court's discretion under 18 U.S.C. § 3553(a)).

When determining a sentence, a court must consider the nature and circumstances of the offense and the history and characteristics of the defendant to impose a sentence that is "sufficient but not greater than necessary" to fulfill the goals of sentencing.  18 U.S.C. § 3553(a).

6

The Court agreed with the Government that Ms. King's conduct was serious and that a message of deterrence was needed. Ms. King completed tax returns that sought tax refunds, knowing full well that the information she provided on the tax returns was false and the claims for tax refunds were fraudulent. She also established multiple bank accounts for the purpose of hiding the deposit of multiple refunds. This kind of insidious crime is difficult to identify, investigate, and prove and, in the meantime, the United States population that pays its taxes bears the burden.

Although Ms. King's crime was serious, in the five-year lifetime of the conspiracy she was a relatively short-term participant. This does not fully mitigate the seriousness of her crime, but its relative duration and Ms. King's voluntary departure from the conspiracy must be taken into account. Further, at sentencing the Court explained that "Ms. King has shown herself to be back on the right road, she has behaved herself [for the years since she regained a job in 2011], she has [gotten] a job, she has worked hard, she is taking care of her daughter, et cetera, and there is no one else that [can] take care of her daughter." Tr. 7/29/2016 at 19. The Court asked whether Ms. King's "crime warrants blowing her fragile family apart again," and answered its own question stating, "I don't think it does." *Id.* at 19-20. Also, considering the need to promote respect for the law, the Court found that Ms. King's conduct since her early admission of guilt to the Government demonstrated that she had regained her respect for the law and that the likelihood that Ms. King will engage in further criminal conduct is very small.

Under the unique circumstances presented here, the Court sentenced Ms. King to three years' probation with a condition of home detention from 7:00 p.m. to 6:00 a.m. and

location monitoring because this sentence was sufficient but not greater than necessary to fulfill the goals of sentencing.[2]

### IV. CONCLUSION

For the reasons stated above, the Court imposed a sentence that varied from the Guidelines.

Date: August 23, 2016

/s/
ROSEMARY M. COLLYER
United States District Judge

---

[2] The Probation Officer recommended a term less than the 36-months for the home confinement condition of probation. Tr. 7/29/2016 at 21. The Court declined to accept this recommendation because of the strength of the Government's arguments on seriousness and deterrence as well as the underlying facts. The Court warned Ms. King:

> [T]his is not going to be easy but it is easier than going to jail. That is the best I can tell you. You get to keep your job. You get to stay home with your daughter, but you are going to have to be [home] by 7:00 at night because they are going to be able to tell if you don't. If you break it and you don't get home by 7:00 every night then you have violated the terms of your probation and you can be jailed. So it is in your control, but it is not going to be easy. I think three years is going to be very hard . . .

*Id*. at 22. Provided that Ms. King fully complies with the terms of her sentence, counsel may move to remove the home confinement condition after 18 months.